UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KIM R. FREYHAGEN,

    Plaintiff,

v.                                            Case No. 3:18-cv-1108-J-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB"), filed on March 30, 2017. (Tr. 10.) A video hearing was held before the assigned Administrative Law Judge ("ALJ") on January 30, 2018, at which Plaintiff was represented by counsel. (Tr. 30-65.) On April 26, 2018, the ALJ found Plaintiff not disabled from April 1, 2015, the alleged disability onset date, through April 26, 2018, the date of the decision.[2] (Tr. 24.)

Plaintiff is appealing the Commissioner's final decision that she was not disabled from April 1, 2015 through April 26, 2018. Plaintiff has exhausted her

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 14.)

[2] Plaintiff had to establish disability on or before December 31, 2020, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 10.)

available administrative remedies and the case is properly before the Court. (*See* Tr. 1-3.) The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

**I. Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff argues that a remand is necessary because the ALJ's RFC finding is not supported by substantial evidence where the ALJ found that the consultative psychological opinion of Dr. Murphy contradicted the ALJ's RFC finding. (Doc. 16 at 1.) Specifically, Plaintiff argues that the ALJ erred in finding the opinion of Dr. Farrin, a non-examining State agency psychologist, more persuasive than the opinion of Dr. Murphy, an examining State agency psychologist. (*Id.* at 20-23.) Plaintiff argues that the ALJ's "conclusion regarding Plaintiff's only moderate concentration, persistence and pace limitations (as opposed to Dr. Murphy's marked assessment) [was] not supported by substantial evidence." (*Id.* at 23.) Defendant responds that substantial evidence supports the ALJ's finding that the opinion of Dr. Farrin was due more weight than the opinion of Dr. Murphy. (Doc. 17.)

### A. Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). In March 2017, the SSA amended its regulations regarding the evaluation of medical evidence for claims filed on or after March 27, 2017.[3] 20 C.F.R. § 404.1520c. Under the new regulations, the Commissioner "will not defer or give any specific evidentiary

---

[3] Plaintiff's application for disability was filed on March 30, 2017; therefore, the new regulations under 20 C.F.R. § 404.1520c regarding the evaluation of medical evidence apply to Plaintiff's claim.

3

weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The amended regulations provide that when the Commissioner evaluates the persuasiveness of medical opinions and prior administrative medical findings, the most important factors are supportability and consistency. *Id.* The Commissioner is not required to articulate how it "considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). "Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Mudge v. Saul*, No. 4:18CV693CDP, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019) (citing, *inter alia*, 20 C.F.R. § 404.1520c(b)(2)) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we considered medical opinions and prior administrative medical findings in [a claimant's] case record.")).

Additionally, when there are "[e]qually persuasive medical opinions or prior administrative medical findings about the same issue," "both equally well-supported [] and consistent with the record [], but [] not exactly the same," the Commissioner "will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5), for those medical opinions." 20 C.F.R. § 404.1520c(b)(3); *see also* 20 C.F.R. § 404.1520c(c)(3)-(5) (listing the additional enumerated factors as the medical source's relationship with the

4

claimant (giving consideration to the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the examining relationship), specialization (noting that the medical opinion of a specialist "related to his or her area of specialty" may be more persuasive than the medical opinion of a non-specialist), and other factors (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements")).

The new regulations are not inconsistent with Eleventh Circuit precedent holding that "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same). "The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources).

## B. The ALJ's Decision

At step two of the five-step sequential evaluation process,[4] the ALJ found that Plaintiff had the following severe impairments: "cervical spine old compression fracture[,] cervical dystonia[,] spondylosis[,] obstructive sleep apnea, gastroesophageal reflux disease, post-traumatic stress disorder, anxiety, depression, asthma, plantar fasciitis, lumbar spine degenerative disc disease, diverticulitis, syncope[,] and tinnitus."[5] (Tr. 12.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*)

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work, as follows:

> [T]he claimant can occasionally stoop, crouch, push and pull. She can understand, remember[,] and carry [] out simple work tasks and adopt to routine workplace changes. She can occasionally interact with supervisors, coworkers[,] and the general [] public. She is unable to work at unprotected heights or with machinery with moving mechanical parts such as conveyor belts. She cannot operate motor vehicles. She can work in areas of moderate noise such as areas with light traffic, department stores[,] and grocery stores. She has to avoid concentrated exposure to dust, fumes[,] and noxious gases.

---

[4] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

[5] Plaintiff conceded that she was not alleging "any error with respect to the ALJ's physical RFC finding[s]" and omitted these impairments and their underlying treatment from her brief. (Doc. 16 at 2 n.2.) Since Plaintiff's arguments before the Court are based on the ALJ's findings with respect to Plaintiff's mental impairments, the undersigned does not find it necessary to discuss Plaintiff's physical impairments or the ALJ's assessment thereof.

(Tr. 14-15.) This RFC was based on "all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§] 404.1529 and SSR 16-3p." (Tr. 15.) The ALJ also "considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. [§] 404.1520c." (*Id.*)

In considering Plaintiff's alleged symptoms regarding her mental health, the ALJ summarized her testimony and statements, in part, as follows:

> At the hearing, the claimant testified that she retired from the military on April 1, 2015. She said that she is 53 years of age and graduated from Pace University in 1988. She reported that she is not working currently. She stated that she lives with her husband who takes her to her medical appointments.
>
> The claimant said that she tried to start her own business[,] but it fell through financially and she could not do it psychologically. She said that she was in the military for 25 years. She said that she worked in medical administration. She said that she was responsible for the drug testing program and physical fitness program. She said that she also did public affairs working with all the community educators. She said that she represented the base. She said that she also did medical administration and taught courses about sexual harassment and ethics. She said that when she was deployed, she worked in humanitarian missions where she was responsible for medical records and phone calls. For the last six years of her career in the military, she said that she worked in personnel and oversaw 100 recruits. Her duties included preparing government credit cards and getting mission flights ready for deployment. She said that she went back to school after retiring from the military but could not continue due to the stress. She indicated that she only attended classes for two months. She explained that she wanted to open an art gallery in Florida but she was not able to pursue it. She said that she has put her artwork up for sale online[,] but nothing has sold.

7

> According to the claimant, she has a post-traumatic stress disorder that prevents her from doing anything. She explained that she has panic attacks about five times a day. She also has difficulty sleeping at night. She reported that she does not like to socialize. She said that she used to go to the gym but has paranoia[,] so she stopped going. She said that she receives mental health treatment at the VA. She stated that she has been suicidal which is why she retired from the military. She said that she experiences depression as well.

(Tr. 15-16.) The ALJ then found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [her] statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr 16.)

In assessing Plaintiff's RFC, the ALJ summarized Plaintiff's mental health treatment as follows:

> Mental health records dated June 22, 2017 show that the claimant's memory was good and her attention was "improving." She denied paranoia or hallucinations (Exhibit 25F p. 75). Mental health progress notes dated September 12, 2017 indicate[] an anxious mood but appropriate affect. Her memory, judgment, impulse control and insight were good. Her concentration was fair (Exhibit 25F pp. 66-67). On examination [on] October 7, 2017, the claimant showed no evidence of unusual anxiety or depression (Exhibit 25F p. 11). Progress notes dated October 30, 2017 indicate that the claimant [was] diagnosed with a generalized anxiety disorder (Exhibit 25F p. 58). Upon mental status examination, the claimant was cooperative with no hallucinations or delusions. Her psychomotor activity was normal. She described her mood as "a little better." Her memory was good and [her] concentration was fair (Exhibit 25F p. 60).
>
> Medical notes dated July 12, 2015 indicate that the claimant's medications for anxiety were working well with no adverse side effects (Exhibit 1F p. 159). In addition, in November 2017, the claimant reported that Fluoxetine [was] [an] effective treatment for

8

> panic attacks and helped reduce the number of panic attacks from
> five a day to 1-3 a day (Exhibit 25F p. 52).

(Tr. 18.)

The ALJ found several reasons why Plaintiff's "allegations of the nature, intensity, persistence, [and] limiting effects of those symptoms [were] not consistent" with the medical and other evidence in the record. (*Id.*) First, the ALJ determined that Plaintiff "described daily activities, which [were] not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (*Id.*) The ALJ continued:

> The claimant attended school for two months before dropping out in the fall of 2016 due to the stress of classes. The medical reports indicate that the claimant was physically active and going to the gym (Exhibit 26F pp. 10 and 32). Further, the claimant told the consultative psychologist in May 2017 that she [was] able to dress, bathe, and groom herself independently. She reported that she [did] not cook because she [would forget] the steps[] and lack[ed] motivation. She said that she [was] able to clean independently, but lack[ed] motivation to do the laundry. She reported sending the laundry out to be done professionally. She reported being able to shop independently. She said that she [did] not manage money as effectively as she used to. She said she [could] drive independently and she [did] not take public transportation, as she [did] not have the need to do so. She said she [had] some good friends. She said that family relationships [were] stressed and strained. She further reported that she like[d] to go to the gym. She reported spending most of her day trying to go to the gym or doing piano lessons (Exhibit 14F). The claimant's activities of daily [living] were considered in assessing the residual functional capacity.

(Tr. 18-19.) The ALJ then analyzed Plaintiff's treatment for her alleged symptoms and noted as follows:

> [T]he claimant has received treatment for the allegedly disabling impairments, that treatment has included a surgery on her toe,

9

medication management, Botox injections, physical therapy and psychotherapy. When considering the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms, it [sic] would not prevent the claimant from engaging in the above residual functional capacity. For example, medical notes dated July 12, 2015 indicate that the claimant's medications for anxiety were working well with no adverse side effects (Exhibit 1F p. 159). In addition, in November 2017, the claimant reported that Fluoxetine [was] [an] effective treatment for panic attacks and helped reduce the number of panic attacks from five a day to 1-3 a day (Exhibit 25F p. 52). . . .

(*Id.*)

In assessing Plaintiff's RFC and the medical opinion evidence and prior administrative medical findings, the ALJ noted that he would "not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from [Plaintiff's] medical sources." (Tr. 20.) The ALJ then considered the medical opinions of Dr. Ferrin, a non-examining State agency psychologist, regarding Plaintiff's mental health as follows:

> A [Disability Determination Process] ["DDS"] psychological medical consultant opined on June 2, 2017 that the claimant [had] a depressive disorder and anxiety disorder. Dr. Ferrin opined that [t]he claimant has a *mild* limitation in understanding, remembering, or applying information; *moderate* limitations in interacting with others; *mild* limitations in concentrating, persisting, or maintaining pace; and, [a] *mild* limitation for adapting or managing herself. *Dr. Ferrin further opined that the claimant [could] maintain adequate attention and concentration to complete work like procedures and [could] sustain a routine without substantial limitation.* Dr. Ferrin found that the claimant [did] exhibit some difficulty with socialization in daily life, but [was] able to interact in a socially appropriate manner. In addition, Dr. Ferrin found that although the claimant [had] some difficulty coping in stressful circumstances, there [was] no substantial

> limitation in the ability to adapt to customary changes in an ordinary
> work environment (Exhibits 2A pp. 7-8 and 17F).

(Tr. 20. (emphasis added).) The ALJ found Dr. Ferrin's opinions were persuasive and gave them some weight, noting that:

> Dr. Ferrin is an expert in the field of psychology who reviewed the records. In addition, Dr. Ferrin's opinion [was] generally supported by the findings on mental status examinations. However, subsequent records received at the hearing level indicate that the claimant [was] *moderately* limited in the areas of concentration, persistence or pace and in understanding, remembering and applying information and therefore, the residual functional capacity has taken that into consideration.

(*Id.* (emphasis added).)

The ALJ then considered the medical opinions of Dr. Murphy, a State agency examining psychologist, regarding Plaintiff's mental health as follows:

> The opinion of consultative psychologist, Dr. Alison Murphy who examined the claimant on May 16, 2017 [was] given some weight (Exhibit 14F). A [m]ental status examination showed impaired attention/concentration due to emotional distress and [Plaintiff] was unable to do [] simple calculations. Her memory was mildly impaired. In the opinion of Dr. Murphy, the claimant [was] able to understand, remember, and apply simple directions and instructions. Dr. Murphy concluded that the claimant [was] *moderately* limited in her ability to understand, remember, and apply complex directions and instructions and interact adequately with supervisors, coworkers, and the public. Dr. Murphy found that the claimant [had] *marked* limitations in concentration and [in] performing a task at a consistent pace.

(Tr. 21 (emphasis added).) The ALJ gave "very little weight to the marked limitations provided by Dr. Murphy" and explained that:

> [Dr. Murphy's opinion] was not supported by the assessment of Dr. Ferrin who was able to review other reports and the treatment notes in Exhibit 25F pp. 60, 66-67, 75[,] which were mental status

11

> evaluations that did not support marked limitations. She opined that
> the claimant [had] moderate limitations in sustaining an ordinary
> routine and regular attendance at work[,] and, [in] regulat[ing]
> emotions, control[ling] behavior, and maintain[ing] well-being. Dr.
> Murphy found no limitations in her ability to maintain personal
> hygiene and appropriate attire, or [in her ability to] be aware of
> normal hazards and take appropriate precautions.

(Tr. 21.) The ALJ also found Dr. Murphy's other opinions to be persuasive and gave them "some weight" as Dr. Murphy was "an expert in the field of psychology and the opinion [was] generally supported [by] and consistent with the treatment records." (*Id.*)

The ALJ also considered the opinions of Dr. Lapid and Dr. Buckiewcz, treating medical sources, in making his RFC limitations findings, and noted as follows:

> The limitations provided by Drs. Lapid and Buckiewcz were
> considered and taken into consideration in finding the limitations set
> forth in the residual functional capacity. The assessments were
> persuasive and supported by treatment records, progress notes and
> mental status examination results. Dr. Buckiewcz reported that the
> claimant was displaying moderate to severe deficits in social
> functioning with symptoms of difficulty expressing her feelings to
> others, irritability and anxiety in social settings (Exhibit 25F p.115).
> Dr. Lapid reported that the claimant [had] anxiety with a moderate
> social impairment (Exhibit 25F p. 55).

(Tr. 21-22.) The ALJ found these assessments to be persuasive and consistent with the record. (Tr. 22.) The ALJ noted that "[t]he social limitations assessed are reflected in the [RFC] by limiting [Plaintiff] to occasional contact with supervisors, coworkers[,] and the general public." (*Id.*)

In addition to finding that the medical evidence regarding Plaintiff's physical impairments supported the RFC determination, the ALJ also found that, considering her mental impairments, Plaintiff could "understand, remember, and carry out simple work tasks and adapt to routine workplace changes" and could "occasionally interact with supervisors, coworkers, and the general [] public." (Tr. 23.)

After considering the RFC assessment and the testimony of the vocational expert ("VE"), the ALJ determined at step four that Plaintiff could not perform any past relevant work. (Tr. 22-23.) At step five, the ALJ found that, based on Plaintiff's age, education, work experience, RFC, and VE testimony, Plaintiff could perform a limited range of light work (such as a marker, router, photocopying machine operator, and electrical equipment assembler), and that this work existed in significant numbers in the national economy. (Tr. 23-24.) Thus, the ALJ found that Plaintiff was not disabled at any time from April 1, 2015, the alleged onset date, through April 26, 2018, the date of the decision. (Tr. 24.)

### C. Analysis

Here, Plaintiff argues that the ALJ's conclusion that Plaintiff only suffered from a moderate limitation in her concentration, persistence, and pace was not supported by substantial evidence and that the ALJ's failure to include "Dr. Murphy's assessment of marked deficits of concentration, persistence and pace" in the RFC was a reversible error requiring a remand. (Doc. 16 at 18-19, 23.) Plaintiff also argues that the ALJ erred in discounting Dr. Murphy's opinion that

13

Plaintiff was "not able to work on a full-time regular and continuous basis" and that "concentration, persistence and pace [did] not refer to the cognitive requirements of the job, but rather to the ability to maintain performance over time." (*Id.* at 18-19.) Moreover, Plaintiff argues that under the new regulations, Dr. Ferrin's and Dr. Murphy's opinions were, at a minimum, equal in persuasiveness, which required the ALJ to continue with his analysis as required by 20 C.F.R. § 404.1520c(b)(3), and to consider the additional factors enumerated in 20 C.F.R. § 404.1520c(c)(3)-(5).

Defendant, on the other hand, counters that the ALJ "properly gave Dr. Murphy's opinion very little weight because it was inconsistent with the other evidence of record[,]" including the June 2017 opinion of Dr. Ferrin. (Doc. 17 at 5.) Because the ALJ properly concluded that Dr. Ferrin's opinion was more persuasive than Dr. Murphy's opinion, Defendant argues, "the ALJ was under no obligation to apply 20 C.F.R § 404.1520c(b)(3)." (*Id.* at 8.) The undersigned agrees with Defendant that the ALJ's RFC finding and evaluation of the opinions of Dr. Murphy and Dr. Ferrin were supported by substantial evidence.

The ALJ provided specific reasons, supported by substantial evidence, for giving "no weight" to Dr. Murphy's opinion that Plaintiff had a marked limitation in concentration, persistence, and pace. The ALJ pointed to treatment notes and mental status evaluations from June, September, and October 2017 "that did not support marked limitations." (Tr. 21 (citing Tr. 1523 (describing Plaintiff's mood as "a little better" and noting that Plaintiff was "oriented x 3, awake, alert," and

14

that her concentration was fair, and her judgment, memory, judgment, insight and impulse control were good); Tr. 1529-30; Tr. 1538 (noting that Plaintiff's "memory remain[ed] good" and her attention span and concentration were improving with Flexeril prescription).)

Further, as shown above, the ALJ's reasoning for giving "very little weight to the marked limitations provided by Dr. Murphy" (Tr. 21) is supported by substantial evidence (*see, e.g.*, Tr. 1515 (noting, on November 3, 2017, that medication had been effective and had reduced the number of panic attacks); Tr. 1581 (noting, on July 31, 2015, that Plaintiff's prognosis was "quite good" and that Plaintiff was intelligent and industrious and that if she developed the skills necessary to control her anxiety she would "make a productive and enjoyable adaptation to civilian life").). As noted by the ALJ, the record reflected that Plaintiff's memory was good and concentration was fair. (Tr. 18 (citing Tr. 1523 (October 30, 2017 mental status and cognitive examination).)

In addition, Dr. Ferrin's Mental RFC assessment cited to a May 11, 2017 exam by a neurologist indicating that Plaintiff was "alert and appropriate with no evidence for aphasia or cognitive loss." (Tr. 78; *see also* Tr. 1232.) Dr. Ferrin also called into question the reliability of Plaintiff's self-reported symptoms and treatment history.[6] (Tr. 78.) The ALJ found that Dr. Ferrin's opinions, including

---

[6] Although Dr. Murphy's opinion indicated that Plaintiff had seen Dr. Wolf, a psychologist from 2014 to the present on a weekly basis, and Dr. David, a psychiatrist on a monthly basis since 2015, upon inquiry, Dr. Ferrin confirmed with Plaintiff that she

that Plaintiff could maintain adequate attention and concentration to complete work-like procedures and could sustain a routine without substantial limitation, were persuasive and gave them some weight because Dr. Ferrin was "an expert in the field of psychology who reviewed the records" and "because Dr. Ferrin's opinion [was] generally supported by the findings on mental status examinations." (Tr. 20.) Nevertheless, although Dr. Ferrin opined that Plaintiff had mild limitations in concentration, persistence, or pace, the ALJ determined that based on a review of subsequent records, Plaintiff had a *moderate* limitation in her ability to maintain concentration, persistence and pace. (Tr. 20; *see also* Tr. 1523, 1529-30, 1530.) However, the ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source (especially when that source's opinion has been discredited), because the responsibility of assessing the RFC rests with the ALJ. *Kopke v. Astrue*, 2012 WL 4903470, *5 (M.D. Fla. Sept. 26, 2012) (report and recommendation adopted by 2012 WL 4867423 (M.D. Fla. Oct. 15, 2012)).

The undersigned also rejects Plaintiff's argument that the opinions of Dr. Ferrin and Dr. Murphy were equally persuasive with respect to Plaintiff's limitation in concentration, persistence, and pace; therefore the ALJ was not required to continue with his analysis and consider the factors under 20 C.F.R. § 404.1520c(c)(3)-(5). Rather, the ALJ adequately explained how he "considered

---

had not seen Dr. Wolf since 2014 or early 2015 and that she had only seen Dr. David one time on December 22, 2015. (Tr. 78.)

16

the supportability and consistency factors for a medical source's medical opinions" pursuant to 20 C.F.R. § 404.1520c(b)(2), properly explained his reasoning for rejecting Dr. Murphy's opinion that Plaintiff's limitations in concentration, persistence and pace were marked, and pointed to evidence in the record supporting only a moderate limitation. Thus, the undersigned finds that the ALJ's reasons for discounting Dr. Murphy's medical opinions related to Plaintiff's mental limitations are supported by the record as a whole. Based on the foregoing, the ALJ properly evaluated the opinions of Dr. Murphy and Dr. Ferrin, and his decision is supported by substantial evidence.

### III. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. Based on this standard of review, the Court concludes that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question is due to be affirmed.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment consistent with this Order, terminate any pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on September 26, 2019.

*[Signature]*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record